UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY ANN YAMADA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>    Defendant. | Case No.  1:20-cv-001386-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 23) |

**INTRODUCTION**

Plaintiff Ashley Ann Yamada ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.  (Docs. 23, 27.)  Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.

1

supported by substantial evidence in the record and was not based upon proper legal standards. Accordingly, this Court will recommend reversing the agency's determination to deny benefits and remanding the matter for further proceedings consistent with this order.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title XVI Supplemental Security Income on July 14, 2017, alleging that she became disabled on January 1, 2001.  AR 179-181.[2]  The alleged onset date was later amended to July 14, 2017.  *See* AR 34.  That claim was denied initially on October 18, 2017, and on reconsideration on January 5, 2018.  AR 65-79; 80-93; 105-110.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Shiva Bozarth held a hearing on September 19, 2019.  AR 31-64.  ALJ Bozarth issued an order denying benefits on the basis that Plaintiff was not disabled on January 2, 2020.  AR 12-30.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 1-6.  This appeal followed.

**September 19, 2019 Hearing Testimony**

ALJ Shiva Bozarth held a hearing on September 19, 2019.  AR 31-64.  Stephen Schmidt, an impartial vocational expert, also appeared and testified.  AR 58-63.  Plaintiff's attorney Jonathan Pena was also present.  The ALJ began by asking Plaintiff's attorney whether he had any objections to anything contained in the record, and he responded that he did not object.  AR 34.  The ALJ then admitted exhibits into evidence.  *Id.*

Plaintiff's attorney, Mr. Pena, opened by noting that Plaintiff was a younger individual applying for Title XVI benefits, with an amended alleged onset date of July 14, 2017.  *Id.*  Mr. Pena stated that Plaintiff had a combination of physical impairments that at Steps Four and Five would cause absenteeism and limit her to a less than sedentary residual functional capacity, rendering her incapable of performing past relevant work or other work.  AR 34-35.  Mr. Pena additionally noted that mental capacity was also at issue, as Plaintiff had instances where Plaintiff would become angry or difficult to deal with, limiting Plaintiff to no contact with the public or coworkers and only simple

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

and routine tasks. AR 35. In response to a question from the ALJ, Mr. Pena stated that there was a mention of narcotics use in the record, but abuse of narcotics were not generally impacting her psychiatric impairment. AR 35-36. The ALJ noted that there was an instance in which Plaintiff was insistent upon receiving prescribed medication and, when denied it, ran down the street throwing things out of her purse. AR 37. The ALJ inquired whether Plaintiff was not taking her medications or was taking more than prescribed. *Id.* Mr. Pena responded that Plaintiff's screening and her contract with "Lags" had not been breached and Plaintiff was compliant with her medications. AR 37-38. Mr. Pena further noted that though Plaintiff took medication, she was only able to tolerate the pain to the point where she did not have to take it at that time. AR 38.

Under examination by the ALJ, Plaintiff testified that the last time she worked was in 2009 or 2010. AR 41. During that time, she was an in-home support worker, where she worked one day before being fired. AR 42. In that position, she said that she could lay down and let one of the people she was there to support watch the television. *Id.* Plaintiff stated that she also worked for Long's Drug Stores, for more than five months but less than a year. AR 43. Plaintiff also said that she worked for Clovis Lakes Associates in an office for approximately three to five months during a summer. *Id.* Plaintiff testified that she finished high school and completed "a little bit of college." *Id.* She said that she was right-handed. *Id.* The ALJ told the VE that they would consider Plaintiff to have had no prior relevant work. *Id.*

Plaintiff testified that she lived in Reedley in a house with her grandparents and her 16-year-old son. AR 44. She said that her grandmother would take her son to school every day, she did not make her own meals, did not do any grocery shopping. AR 44-45. She said that she drove her grandmother's car "every now and then" but had only recently gotten her license back after it was suspended due to tickets. *Id.* Plaintiff said that her grandmother brought her to the hearing. AR 45. Plaintiff said that she had friends or others that she socialized with who would come over to her house or would go out to the movies with her once or twice a year. *Id.* She said that she did not know why she did not go out more often. AR 46. Plaintiff testified that she would watch television at home, would watch whatever caught her attention, and could sometimes watch an entire television program.

*Id.* Plaintiff said that she would read things online, use Facebook on her phone, text friends, and play free casino games on her phone. *Id.*

Upon examination by her attorney, Plaintiff testified that sometimes she would not be able to watch an entire television program because her mind would wander. AR 46-47. Plaintiff said that she had not had any improvement with her back issues following her social security benefits application in 2017. AR 47. She stated that she received treatment at LAGS Medical Center and was told she needed to be put back on physical therapy but was not in physical therapy at the time of the hearing. *Id.* Plaintiff testified that the physical therapy did not help when she had tried it before, and that she previously received injections every month. AR 47-48. Plaintiff said that she was previously given medication to help control the pain but was off the medication for approximately 30 months because her provider kept telling her that her spine was not curved enough. AR 48. She then said that her latest doctor told her that she needed to have paperwork saying that she could have pain medication with her anxiety medication. *Id.* Plaintiff said that she was off the pain medication since June and was last prescribed pain medication in May. AR 48-49. In responding to her attorney's question regarding medication compliance, Plaintiff testified that some days she was in excruciating pain and took more pain medication. AR 49. She said that she would consequently run out of pain medication earlier than scheduled. *Id.* Plaintiff testified that she had better days and bad days during a month, and was taking her medication as prescribed on the better days. *Id.* Plaintiff said that she was told by her doctor not to double up on her medication, but that those instructions were difficult for her to follow. AR 49-50. Plaintiff said that, as she had been off her medication for some time, she would manage the pain by staying in bed or crying due to the pain. AR 50. Plaintiff said that while she was on her medication, the pain was there "All the time." *Id.* She said that when she was using her medication, she rated her pain as being at an eight or nine out of ten. AR 50-51. She said that when she received injections, that would bring her pain to approximately a seven out of ten. AR 51.

Plaintiff testified that she had pain in her lower back and in her neck, and that activities such as brushing her teeth, leaning over, and standing and doing dishes for five minutes would cause her pain. AR 51-52. She said that while on medications, she could stand for approximately a half hour before needing to sit down and take a break, and that she would need approximately an hour break before she

could return to standing for a half hour. AR 52. She said that she could sit for about an hour before needing to stand up or lay down. *Id.* Plaintiff said that she would need to stand, walk around, or lay down for approximately an hour before she could return to doing activity seated in a chair. AR 52-53. She stated that she could walk about 25 yards before needing to take a break. AR 53. Plaintiff said that she did not go grocery shopping, could lift a gallon of milk and hand it to someone, but was not sure how much weight she could tolerate lifting. *Id.* She stated that days on which she did tasks her pain became noticeably worse. AR 54. Plaintiff testified that when she complied with the medication dosage, approximately three-quarters of a month still consisted of bad days. *Id.* She said that during an average day when she was taking medication as prescribed, she would need to lie down to rest during daytime hours for approximately five or six hours. AR 54-55.

Plaintiff said that for her daily routine, she would get up and make sure her son got up but would not assist him in getting ready for school. AR 55. She said that she would clean "a couple of things" around her room, spending approximately ten to fifteen minutes cleaning. *Id.* She stated that she would sometimes help with the dishes and could barely sweep the small one-person bathroom that they used. AR 56. Plaintiff also said that she would sometimes have trouble falling asleep. *Id.* Plaintiff noted that she had been switched from Xanax to Klonopin, though sometimes she would not take it because it would make her very groggy the following day. AR 56-57. She said that she told her psychiatrist about the grogginess and noncompliance as she had not seen the doctor since starting the medication. AR 57. Plaintiff stated that she still experienced a panic attack or anxiety attack once or twice a week, and would see a psychiatrist once a month beginning in 2019. AR 58. She said that she had not noticed seeing the psychiatrist helping, and that back surgery had previously been discussed but she had not received further information regarding any potential back surgery. *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Stephen Schmidt. AR 58-63. The VE testified that he could be an impartial witness, Plaintiff's attorney had no objections to the VE's qualifications, and the VE stated that he would inform the ALJ if his testimony deviated from the Dictionary of Occupational Titles. AR 59. The ALJ asked the VE hypothetical questions and asked the VE to assume an individual with the same age, education, and work experience as Plaintiff. *Id.* For the first hypothetical, the ALJ asked the VE to consider a

hypothetical individual who: could lift or carry 50 pounds occasionally, could lift or carry 25 pounds frequently; could stand or walk at least six out of eight hours; could sit for at least six out of eight hours; would need to change positions once per hour while remaining at the workstation; could frequently reach overhead; could frequently operate foot controls; could frequently climb ramps or stairs; could never climb ladders or scaffolds; could frequently stoop and crouch; could never work in unprotected heights or around fast-moving machinery; would be limited to simple and routine tasks; and would have jobs of a reasoning level of one or two. AR 59-60. The VE testified that there were jobs in the national economy, including: Mail Clerk (DOT No. 209.687-026, light, SVP 2, with 58,000 jobs); Office Helper (DOT No. 239.567-010, light, SVP 2, with 265,000 jobs); and Parking Attendant (DOT No. 915.473-010, light, SVP 2, with 77,000 jobs). AR 60.

For the second hypothetical, the ALJ asked the VE to assume an individual who: could lift or carry 20 pounds occasionally; could lift or carry ten pounds frequently; could stand or walk at least six out of eight hours; could sit for at least six out of eight hours; could occasionally climb ramps or stairs; could never climb ladders or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; could never work at unprotected heights or around fast-moving machinery; and would be limited to simple and routine tasks. AR 60. The VE testified that the response to the first hypothetical would remain appropriate for the second hypothetical. AR 61.

For the third hypothetical, the ALJ asked the VE to assume an individual who needed two additional 15-minute breaks per day due to pain symptoms. *Id.* The VE testified that there would be no work in the national economy for such an individual. *Id.* For the fourth hypothetical, the ALJ asked the VE to assume an individual who would need to be absent two days per month unscheduled due to pain symptoms. *Id.* The VE testified that there would be no work in the national economy for such an individual. *Id.*

Upon examination by Plaintiff's attorney, the VE testified that if the individual from the first hypothetical needed a sit/stand option and would need to alternate between sitting, standing, and walking, the frequency of the rotation would impact the world of light work or sedentary work. AR 61-62. The VE testified that the alternation would limit the jobs significantly but the jobs the VE found in response to the first hypothetical would remain. AR 62. Plaintiff's attorney then asked

whether there would still be work available if a hypothetical individual with the same limitations would have off-task behavior for 15% of the workday. *Id.* The VE testified that there would be no work. *Id.*

The VE testified that his testimony as it related to a sit/stand option, time off-task, and additional breaks was based upon his training and experience. AR 62-63. The VE further testified that the job numbers identified were based upon a source generally and reasonably relied upon by other experts in his field. AR 63. The VE also testified that his testimony was based upon his years of training, education, experience, and access to professional resources, and was within a reasonable degree of professional certainty. *Id.* Plaintiff's attorney closed by contending that the combination of Plaintiff's impairments would prevent her from performing at Step Four and Step Five. *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-30. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 14, 2017, the application date. AR 17. The ALJ identified the following severe impairments: obesity and degenerative disc disease. *Id.* The ALJ also determined that other impairments, including a right ankle fracture, bipolar disorder, and depression did not cause more than a minimal limitation in her ability to perform basic work activities and were therefore nonsevere. AR 17-18. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform a full range of work at the light exertional level with the nonexertional limitations that Plaintiff was: able to lift and carry 50 pounds occasionally and 25 pounds frequently; able to stand and walk at least six hours total and sit for at least six hours total in an eight-hour workday but needed to be able to change positions once per hour while remaining at the workstation; could frequently reach

overhead; could frequently operate foot controls; could frequently climb ramps or stairs; could frequently stoop and crouch; was unable to climb ladders or scaffolds due to medication side effects; should never work at unprotected heights or around fast moving machinery due to medication side effects; and was limited to performing only simply and routine tasks due to medication side effects. AR 20; 20-24. The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)." *Id.*

The ALJ found that Plaintiff had no past relevant work, was defined as a younger individual on the date the application was filed and had at least a high school education. AR 24. Given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 24-25. The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Mail Clerk (DOT No. 209.687-026, light exertional level, unskilled, SVP 2, with 58,000 jobs nationally); (2) Office Helper (DOT No. 239.567-010, light exertional level, unskilled, SVP 2, with 265,000 jobs nationally); and (3) Parking Attendant (DOT No. 915.473-010; light exertional level, unskilled, SVP 2, with 77,000 jobs nationally). *Id.* The ALJ therefore concluded that Plaintiff had not been disabled from the application date of July 14, 2017. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,*

*Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. (Doc. 23 at 11-15.) Plaintiff next contends that the ALJ erred in discounting treating source opinions despite finding them persuasive. (*Id.* at 15-19.)

### A. Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 23 at 11-15.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

9

*Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 23.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record.  *Id*.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical and other evidence.  *Id*.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ contrasted Plaintiff's allegations with the objective findings as follows:

> she alleged her condition worsened beginning in 2017 (see Exhibit 7E, p. 2), but that is inconsistent with the generally unremarkable March 2019 findings and opinion of Dr. Wagner (see Exhibits 10F; 20F). The claimant further alleged her ability to bend is "affected" (see Exhibit 4E, p. 6), but Dr. Wagner's March 2019 report that she was easily able to bend over at the waist to take off her shoes and socks and put them back on (see Exhibits 10F; 20F) does not support this. The claimant also alleged her ability to remember and concentrate are "affected" (see Exhibit 4E, p. 6), but that is inconsistent with Dr. McDonald's examination findings, which showed an unimpaired recent and long-term memory with excellent attention and concentration (see Exhibit 9F, p. 4).

AR 23-24.  The ALJ also earlier discussed the history of Plaintiff's allegations of low back pain and neck pain, contrasting those allegations with medical findings.  AR 21.

In support of the contention that Plaintiff's allegations of a worsening condition and inability to bend were inconsistent with the medical evidence, the ALJ cites relatively normal findings from a March 2019 report which noted that Plaintiff was "easily able to get up out of the chair in the waiting room and walk at a normal speed back to the exam room without assistance," "sat comfortably," and "easily got on and off the exam table, easily able to bend over at the waist, take off shoes and socks and put them back on demonstrating good dexterity and good flexibility."  AR 681 (also noting under

10

Neck/Nodes findings: "Supple without adenopathy, thyromegaly, or masses. There are no palpable cervical, supraclavicular, epitrochlear, or axillary lymph nodes."); 682 (noting normal Coordination/Station/Gait findings with negative Romberg test, and relatively normal range of motion findings).  The ALJ also earlier discussed Plaintiff's low back pain and neck pain but found that there were relatively normal findings.  AR 21; *see, e.g.* AR 521 (May 2016 extremities findings noting "No clubbing, cyanosis, pallor, or edema. Decreased sensation in the lower extremities."); 606 (August 2017 report noting normal range of motion and strength for musculoskeletal system); 912 (July 2018 neurosurgery progress note stating "Patient walks with no neurological deficit in lower extremity."); 926 (March 2019 Impression noting "Normal bilateral lower needle EMG and nerve conduction study; there is no electrodiagnostic evidence of large fiber peripheral polyneuropathy, lumbar radiculopathy, or any other nerve entrapment neuropathies on this study."); 944 (March 2019 report noting "Motor Strength/Muscle Bulk and Tone: Strength is 5/5 in the bilateral upper and lower extremities, including grip. Normal bulk and tone; no atrophy noted.").  The ALJ therefore appropriately discussed the medical evidence as one factor in discounting Plaintiff's symptoms testimony.

Second, the ALJ noted that Plaintiff "alleges suffering from significant limitations, which prohibit her from working… but that is inconsistent with her report that she cooks, cleans, drives, shops, walks for some exercise, and performs her own activities of daily living without assistance." AR 24.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds.  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id*. at 1113.

However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.  The

Ninth Circuit has also held that ALJs err when they fail to "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Courts in this district have found that the ALJ erred when the ALJ failed to precisely identify how the daily activities conflicted with symptoms testimony. *See Sanders v. Comm'r of Soc. Sec.*, No. 1:21-cv-00204-DAD-BAM, 2024 WL 1641035, at *2 n.2 (E.D. Cal. Apr. 16, 2024) ("'The ALJ's lack of explanation is particularly troubling here because it appears unlikely that, for example, the evidence regarding plaintiff's daily activities significantly undercut his subjective testimony. The ALJ noted that plaintiff testified he 'was able to carry groceries from his truck to his house,' 'does laundry, shops, cooks, and does dishes,' and 'is able to [do] yard work off and on, with difficulty'… In any event, the ALJ did not explain the relevance of any of plaintiff's testimony regarding his daily activities, so the court is unable to evaluate the ALJ's reasoning."); *Ridens v. Kijakazi*, No. 2:20-cv-01769-JDP (SS), 2023 WL 5613826, at *3 (E.D. Cal. Aug. 30, 2023) ("Although the ALJ identified two activities that purportedly conflicted with plaintiff's testimony, he failed to specify what component of plaintiff's testimony was undermined by his performance of these activities… More fundamentally, there is no apparent conflict between plaintiff's testimony and the two activities identified by the ALJ. Plaintiff primarily alleged difficulty with walking and standing for extended periods of time, which is not inconsistent with doing 'some laundry.'").

Here, the ALJ simply noted that Plaintiff "alleges suffering from significant limitations, which prohibit her from working," which the ALJ contended is inconsistent with a report in which Plaintiff noted that she "does cook and clean," "does drive and did drive here today," "does shop and perform her own activities of daily living without assistance and walks some for exercise." AR 24; 680. However, the ALJ's discussion of these limited activities does not explain how they contradict Plaintiff's allegations of neck pain, back pain, bending ability, or other limitations. The ALJ therefore has not adequately explained how Plaintiff's daily activities provided a sufficient basis for discounting Plaintiff's testimony. *Burrell*, 775 F.3d at 1138. Thus, the ALJ only properly used medical evidence in discounting Plaintiff's testimony. AR 21-24. Because lack of supporting medical evidence cannot form the sole basis for discounting testimony, the ALJ erred in discounting Plaintiff's symptoms testimony. *Burch*, 400 F.3d at 681.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. See *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison*, 759 F.3d at 1020. As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should address whether Plaintiff's symptoms testimony is adequately supported or whether there are specific, clear and convincing reasons for rejecting Plaintiff's symptoms testimony.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether the ALJ erred in considering PA-C Hector Aguilar's medical opinion. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

///
///
///
///
///

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision was not supported by substantial evidence in the record as a whole and was not based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (Doc. 23) be GRANTED;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and the agency's determination to deny benefits be REVERSED; and
3. The Clerk of this Court be directed to enter judgment in favor of Plaintiff Ashley Ann Yamada and against Defendant Martin O'Malley, Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 28, 2024**            /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE